## ⸥ Cowan *against* Getty.

A return of service of a *scire facias* sur mortgage, upon a tenant in possession, under an alience of the mortgagor, who holds by a deed subsequent to the mortgage, is not such a service that the judgment therein will bind the alienee, without further proof of his knowledge of the proceedings.

In an action ot ejectment, in which the plaintiff relies upon a title under a sheriff's sale on a mortgage, of which the defendant was entitled to have had notice, by service of the *scire facias* upon him, the latter may make the same defence upon the allegation of payment of the mortgage before judgment, as he might have made if he had been summoned upon the *scire facias*.

ERROR to the district court of *Alleghany* county.

Hugh Cowan against Samuel Getty.   Ejectment.

In the year 1809, Jeremiah Wright was seised of the land in dispute, and on the 11th of September, in that year, he mortgaged the same to John M'Michael, for the sum of 297 dollars.

On the 19th of September 1811, Jeremiah Wright entered into an article of agreement with Hugh Sterling and Isabella Noble, for the sale of the same tract of land.   And on the 1st of October following Jeremiah Wright and wife executed a deed for the premises, to Hugh Sterling, for the sum of 794 dollars.

On the 12th of January 1814, Mrs Isabella Noble assigned all her title under the article to James Gray.   In 1814, Hugh Sterling died, leaving no heirs of his body, but a widow, four brothers and sisters, or their issue, his heirs at law.   On the 24th of January 1815, William Waters, the heir at law to one fourth of the property of Hugh Sterling (being the only son of a deceased sister) together with the widow of Hugh. Sterling, convey their interest to James Gray.   On the 30th of March 1816, James Gray conveys to Thomas O'Connor with general warranty; and on the 23d of March 1818, Thomas O'Connor conveys to John O'Connor.

To April term 1826, a *scire facias* issued on the mortgage, against Jeremiah Wright, to which Jacob Douthet, tenant in possession, was made a party.   This writ was returned served on Jacob Douthet and *nihil* as to Jeremiah Wright.   To this suit a general appearance was entered by two counsel.   And an appearance *de bene esse* by another.   Two of the counsel withdrew their appearance, and the other paid no attention to the suit—and finally a verdict was rendered for plaintiff on the 13th of October 1832, for 709 dollars, the whole amount of mortgage and interest, no person taking any part or making any defence for the defendants.

On the *levari facias* afterwards issued, the plaintiff in this case, who acted as the agent for the mortgagee M'Michael, became

the purchaser of the property for 160 dollars.   Against the validity of this title of the plaintiff, the defendants alleged,

That Jeremiah Wright was dead at the time of the trial and judgment entered on the mortgage, and therefore that the judgment is a nullity and absolutely void.   It was proved that Jeremiah Wright left the country in the summer of 1824, and has not been heard from since, except that about three or four years ago it was reported that he was dead.   On this part of the case the court below (Grier, President), said,   " It is true that upon such evidence the jury might fairly infer his death before the judgment was rendered.   But as Roberts, one of the counsel, who had entered a general appearance (and of course, whether authorised or not, represented Wright) never had withdrawn such appearance, nor suggested the death of the defendant— the plaintiff was not bound to know it (and although this court have decided, that process issued against a deceased person is absolutely void), yet we are not prepared to decide, that even if the jury do believe the defendant was dead, that the judgment rendered is void. It is the judgment of a court having jurisdiction, and I do not know that it has ever been decided, that on a judgment on a mortgage, and afterwards the mortgagor dies, that it is necessary to make his representatives a party to the *levari facias*—the judgment itself being in the nature of a decree of foreclosure, and an order of sale a proceeding in *rem*."

But it is contended also, that the whole mortgage money had been paid more than ten years before the suit on this mortgage was instituted, and that the *scire facias* was fraudulently prosecuted by the mortgagee after the mortgagor had left the country.

To which the court below said, " This, if true, may be a good defence, provided the defendants are not estopped from making it, either by their own laches or some superior equity of the plaintiff's.

To the April term 1815, John M'Michael brought an ejectment on his mortgage, against Isabella Noble, who was then in possession; to which suit James Gray, her landlord, was made a party—and on the trial, before the arbitrators, it was proved to their satisfaction, that the whole mortgage was paid; and they found accordingly for the defendants.   The plaintiff never thought fit to appeal from the award.

On this subject the court below said,   " Even if this judgment was not conclusive of the fact, you might probably be of the opinion, that the evidence now before you, of itself, is sufficient and satisfactory that this mortgage was fully paid and satisfied more than twenty years ago.   But are the defendants estopped from making this defence in this case."

" It is a well established rule of law, that a judgment binds or estops none but parties or privies.   It is also decided that it is not necessary in this state to give notice to the terre-tenant of the mort gaged premises, of the suing out of the writ of *scire facias;* or to

[Cowan v. Getty.]

make him a party to the proceedings in any way, in order to make a good and valid sale of the land, to satisfy the debt, or money due upon the mortgage. 'In some places it is the practice to give notice to the terre-tenant—and the only difference that a want of notice to the terre-tenant makes, is, that he will be permitted to make any available defence against the purchaser of the land at sheriff's sale, that he might have set up on the trial of the *scire facias*, in case it had been served on him. Clarke *v.* Mather, 1 *Watts* 491; Neas *v.* Hollenback, 1 *Serg. & Rawle* 548. But if it has been served on him, he can make no such defence against the sheriff's vendee.· He who will not speak when he may be heard, shall not afterwards be heard when he may wish to speak."

" Had the defendants here notice? or were they heard? for in either case they will be estopped from setting up their defence now, which they might have made, or did make before.

The return of the writ in this case was " served by showing this writ to Jacob Douthet, and leaving a copy." Jacob Douthet was, as is testified by Mr. Burke, in possession, a tenant under John O'Connor, who, at that time, was the terre-tenant. Was this notice to O'Connor? I think it was not. Unless accompanied with proof that O'Connor had received it or had employed counsel to appear in the case, I know of no rule of law or justice that makes service of a *scire facias* sur mortgage on the occupant of land, notice to the owner. Have you any evidence that O'Connor had notice? Or that, having knowledge, he appeared and was heard, or might have been heard? Messrs. Burke and Fetterman, who appeared at one time, swore that they never were employed by or appeared for O'Connor or Douthet. Roberts, who appears (very conveniently for plaintiff) without stating for whom, must be taken to have appeared generally for the defendants on record, (whether in fact employed by plaintiff or defendant.) You have no evidence that he was employed by O'Connor; but it is said that James Gray employed Burke and Fetterman in that case, and that as he attends to the defence in this case, being liable on his warranty of the premises, the defendants cannot now make this defence. It is true Mr. Gray spoke to Burke and Fetterman to see to the mortgage case—that they did enter their names on the docket—and afterwards (for what reason it does not appear) withdrew. Now as James Gray had no title to the premises at the time, it is unnecessary to decide, whether knowledge of the proceedings was equal to notice; or whether, if the owner have knowledge merely of a *scire facias*, and employed counsel to look to his interests, (who might think that their client not being notified of the proceedings, was not bound; and might, therefore, withdraw from the case, and make no defence,) he would be bound by a judgment, when he had not, in fact, had a hearing, or been made a party. Although James Gray had covenanted to warrant Thomas O'Connor, it does not follow that notice to him would bind John O'Connor, the claimant or owner of

[Cowan v. Getty.]

the land.   Nor because Gray, on account of his warranty, has been noticed to defend in this case, by John O'Connor, does that make his act binding on, or conclusive upon him in the mortgage case. O'Connor has a claim to stand on his own rights—his warranty might be a very inadequate resource in case of loss.   The fact that Gray, the warrantor, had spoken to counsel, may afford some ground for an inference or presumption, that possibly Douthet had notified his landlord O'Connor, and O'Connor had notified Gray, his warrantor, to defend the mortgage suit—but unless strengthened by evidence of some other facts or circumstances of knowledge or notice, or interference by O'Connor, you may not think it alone sufficient evidence of that fact.   If you believe then that O'Connor had no notice of the mortgaged proceedings—and that he took no part in them, nor had a hearing; if you believe also, that the whole mortgage money was fully paid and satisfied to M'Michael, long before the suit was entered on the mortgage, can the plaintiff in this case recover?

The plaintiff's counsel contend that he is a stranger in this case; that he purchased on the faith of a judgment of the court, and therefore should be protected.   But although this fact might be very greatly doubted, and there is much more than a suspicion, from the fact of plaintiff's agency, the price, (so far less than the amount of the judgment or the value of the land,) the singular receipt for the mortgage, given to the plaintiff, &c., that John M'Michael is the real party in interest.   Yet I consider it, under the decision of our supreme court on this subject, as immaterial.

The equity of a plaintiff who has purchased at a sheriff's sale on a judgment sur mortgage, to which he was no party, is no greater than that of a defendant, who is also a stranger to the same proceedings.   A person who purchases property at a sheriff's sale on a *scire facias* sur mortgage knows, or ought to know that the judgment binds, and is conclusive against none but parties or privies. It is his business to inquire against whom the judgment was rendered, and that if he finds that the terre-tenant or owner of the land is not a party to the judgment, or took no part in it, he knows that he runs the risk of losing his title, if it be afterwards proved that the mortgage was paid.

Verdict for defendant.

Errors assigned.

1. The court erred in admitting testimony for the purpose of impeaching the judgment in the *scire facias* proceedings on the mortgage; and in charging the jury that said judgment may be impeached collaterally, as in this case.

2. The court erred in charging the jury that notice to the tenant in possession, of the *scire facias* proceedings on the mortgage, was not notice to his landlord, O'Connor.

3. The court erred in charging the jury, that a person who purchases property at sheriff's sale on a *scire facias* sur mortgage,

[Cowan v. Getty.]

is bound to inquire whether all persons who may have acquired an interest in the land subsequent to the giving of the mortgage, had notice of the *scire facias* proceedings.

*Metcalf,* for plaintiff in error.
*Fetterman,* for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—The defence in this ejectment was, that the money due on the mortgage had been fully paid and satisfied before the institution of the *scire facias* in which judgment was obtained, execution issued, and the land sold by the sheriff to the present plaintiff. And the question is, whether a return of service of the *scire facias* on a tenant in possession under the alienee of the mortgagor, who holds by a deed subsequent to the mortgage, is such a service that the judgment therein binds the alienee, without further proof of his knowledge of the proceedings. The court below were of opinion that it was not, and in this we think there was no error. If the plaintiff in the *scire facias* means to bind the alienee by a proceeding against him as terre-tenant, the service ought to be upon him, or it should appear that he had notice of the pendency of the suit, and an opportunity to defend it. It would be right and proper that tenants should, in all cases, give notice to their landlords of the service of process upon them affecting the title of their landlords, but, there is no law obliging them to do so, in a case like the present. In ejectment, the tenant is required to give notice, by act of assembly, under a penalty. It would be dangerous to the interests of the landlord to hold, that service of process affecting the land, on his tenant, is service on him, where the tenant may or may not inform him of it at his own option, and with impunity. It is to be observed, in the present case, that although the mortgagor was a party in the *scire facias,* yet there was no return of service as to him, or appearance expressly for him, or judgment against him on *nihil dicit.* The appearance of the attorneys is for defendant, and that must be taken to mean the defendant who was served. The sole question is as to the efficacy of a service on a tenant.

Judgment affirmed.